UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS MIGUEL SANCHEZ,<br>Plaintiff,<br>-v.-<br>ELIEZER GARCIA,<br>Defendant. | 24 Civ. 2588 (KPF)<br>**ORDER** |

KATHERINE POLK FAILLA, District Judge[1]:

Plaintiff Luis Miguel Sanchez sued Mogools, Inc. ("Mogools") and Eliezer Garcia (collectively, "Defendants") for $1,500 in unpaid wages, as well as certain related fees and penalties under federal and state law. After Defendants' protracted noncooperation and noncommunication, Plaintiff obtained certificates of default against them and sought default judgment in excess of $100,000. Pending before the Court is Mr. Garcia's request to vacate the certificate of default entered against him. (Dkt. #85 ("Garcia Letter")). For the reasons that follow, the Court grants Mr. Garcia's request.

By way of relevant procedural background, the Clerk of Court issued certificates of default against Defendants on June 14, 2024. (Dkt. #13-14). Following extensive delays in this case — which the Court understands to be the fault of either Mr. Garcia, former defense counsel, or both (*see* Dkt. #89 (transcript of January 15, 2026 default judgment hearing ("D.J. Hg. Tr.")) at 3-18, 21-23) — Plaintiff moved for default judgment against Defendants on December 16, 2025 (Dkt. #71-74; *see also* Dkt. #81 (order contextualizing

---

1 The Clerk of Court is directed to modify the caption of the case as shown above.

duplicative motion papers)). Promptly thereafter, the Court ordered Defendants to show cause why it should not impose default judgments against each of them (Dkt. #76), and on January 15, 2026, the Court held a hearing on the order to show cause (January 15, 2026 Minute Entry).

At this hearing, the Court entered a default judgment against Mogools, which did not appear. (D.J. Hg. Tr. 20-21; *see also id.* at 21 (deferring the determination of damages for the time being)). By contrast, Mr. Garcia appeared, and the Court permitted him "a chance … to explain why [the Court] shouldn't default him." (*Id.* at 20; *see also* January 15, 2026 Minute Entry (setting schedule for Mr. Garcia to submit a letter "in support of his position that the Court should vacate the certificate of default entered against him" and for Plaintiff to oppose)). Mr. Garcia submitted his letter request on or about February 19, 2026 (Garcia Letter), and Plaintiff opposed on March 2, 2026 (Dkt. #86-87).

Turning to the applicable law, the Court notes that "[w]here, as here, the Clerk of Court has entered a Certificate of Default, but no default judgment has yet been entered, the Court decides a motion to vacate the entry of default pursuant to the 'good cause' standard under Fed[eral] R[ule] [of] Civ[il] P[rocedure] 55(c), which is more lenient than the standard to set aside a default judgment under Rule 60(b)." *Ghost in the Mach. Inc.* v. *Planned Parenthood Fed'n of Am., Inc.*, No. 22 Civ. 9270 (VSB), 2026 WL 1383365, at *2 (S.D.N.Y. May 18, 2026) (quoting *Bizelia* v. *Clinton Towers Mgmt.*, No. 20 Civ.

8065 (JPC) (OTW), 2023 WL 8258884, at *1 (S.D.N.Y. Nov. 29, 2023)); *see also Peterson* v. *Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (summary order) ("Rule 55(c) permits a party to be relieved of default 'for good cause,' whereas a default judgment may only be set aside in accordance with Rule 60(b)." (citing Fed. R. Civ. P. 55(c))).

Although Rule 55(c) does not define "good cause," the Second Circuit has advised district courts to consider three criteria in deciding a motion to vacate a certificate of default: "[i] whether the default was willful; [ii] whether setting aside the default would prejudice the adversary; and [iii] whether a meritorious defense is presented." *Enron Oil Corp.* v. *Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *see also id.* ("Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment, *see, e.g.*, *Meehan* [v. *Snow*], 652 F.2d [274, 276 (2d Cir. 1981)], because the concepts of finality and litigation repose are more deeply implicated in the latter action."); *accord Peterson*, 467 F. App'x at 33. Courts may also consider "whether the entry of default would bring about a harsh or unfair result." *Enron*, 10 F.3d at 96. The Second Circuit generally disfavors defaults and "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default." *Cody* v. *Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (collecting cases); *Enron*, 10 F.3d at 95 (noting the Court's "oft-stated preference for resolving disputes on the merits"); *see also Brien* v. *Kullman Indus., Inc.*, 71 F.3d 1073,

1077 (2d Cir. 1995) (noting that there is a "limitation on the scope of the district court's discretion" because of the Second Circuit's "preference for resolving disputes on the merits"). Accordingly, in ruling on a motion to vacate a certificate of default or a default judgment, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron*, 10 F.3d at 96; *see also New York* v. *Green*, 420 F.3d 99, 104 (2d Cir. 2005) ("[I]n ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits.").

To support his request to vacate the certificate of default, Mr. Garcia appeals primarily to the first and third criteria, arguing that his default was not willful and that he has a meritorious defense. *See Enron Oil Corp.*, 10 F.3d at 96. In his factual summary, Mr. Garcia states that Mogools (which does business as "Spanglish Bar & Restaurant") was a restaurant incorporated by Gerardo Pacheco in 2017. (Garcia Letter ¶ 6; *see also* Dkt. #1 ("Compl.") ¶ 12). Mr. Pacheco was Mr. Garcia's "friend," whom he "occasionally helped," including by giving "informal business advice." (Garcia Letter ¶ 7). In order to assist Mr. Pacheco in getting Mogools off the ground, Mr. Garcia agreed to incorporate Mogools in his name because he had superior credit. (D.J. Hg. Tr. 5 ("[Mr. Pachecho's] credit was bad, so we had it in my name to incorporate, to get him a loan to finish so he can open up. And I forgot to remove it. But I

was helping him there to help in the business, yeah. He was starting out.”); Garcia Letter ¶ 9 (“My involvement was in name only for purposes of assisting with financing.”)). Mr. Garcia never understood himself to “exercise[ ] ownership control over Mogools,” and he “never operated the business.” (Garcia Letter ¶ 9). Mogools eventually opened in January 2022, and it employed Plaintiff from February 2023 to November 2023. (*Id.* ¶ 10). Because Plaintiff “exclusively spoke Spanish,” Mr. Garcia, who is bilingual, “facilitated communication between Mr. Pacheco and … [P]laintiff.” (*Id.* ¶ 12).

Plaintiff sued Defendants under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and related state laws for failing to pay him $1,500 in wages. (Compl. ¶ 66). Plaintiff alleged in his complaint that he was entitled to back pay, damages, reimbursement of costs, statutory penalties, and reasonable attorneys’ fees and costs. (*See generally id.*). By the time of the January 15, 2026 default judgment hearing, however, Plaintiff asserted that he was entitled to judgment in the amount of $110,143.09, plus prejudgment interest. (Dkt. #72 at 34).[2] But Mr. Garcia, maintaining that he has a meritorious defense, argues that it is *Plaintiff* who owes Mogools money. (Garcia Letter ¶ 20; D.J. Hg. Tr. 18-19).

2 To prepare for the default judgment hearing, the Court reviewed the individual components comprising Plaintiff’s requested judgment amount and reached a slightly different number: $110,550.74. The Court’s law clerk discussed the discrepancy with Plaintiff’s counsel just before the default judgment hearing began, and counsel deferred to the Court’s calculation. The Court makes no definitive findings here, but merely notes these facts should they become relevant at a later stage of the litigation.

Mr. Garcia apparently agrees that, originally, Plaintiff was owed $1,500 in unpaid wages. (Garcia Letter ¶ 20; D.J. Hg. Tr. 18-19). But Mr. Garcia maintains that, while working for Mogools, Plaintiff inappropriately made purchases "inconsistent with business needs" (Garcia Letter ¶ 18) for somewhere in the range of $2,189.66 to $3,000 (*id.* ¶¶ 13-20; D.J. Hg. Tr. 18 ("[H]e charged over $3,000 in gas and personal stuff.")). Accordingly, in Mr. Garcia's view, Plaintiff and Defendants are "even." (D.J. Hg. Tr. 18 ("I said, well, if I owe you 1500, you used that credit card to charge over 3,000. I'm not going to the cops, not putting in a police report. We're even.")).

At this early stage of the case, the Court cannot resolve this dispute. But such resolution is not required to vacate a certificate of default. Mr. Garcia need only "present[ ]" a meritorious defense. *Enron Oil Corp.*, 10 F.3d at 96. His position that Plaintiff owes Defendants money, not the other way around, satisfies this requirement.

Turning to whether Mr. Garcia's default was willful, Mr. Garcia lays the blame at the feet of Mr. Pacheco and former defense counsel. (Garcia Letter ¶¶ 1-5). On Mr. Garcia's telling, he did not personally receive service of the summons and complaint. (*Id.* ¶ 1; *see also* Dkt. #9 (affidavit of service on Mr. Garcia, describing service by hand delivery on "CO-WORKER" at "SPANGLISH BAR & RESTAURANT" and by mail to Spanglish Bar & Restaurant)). Mr. Garcia only learned of this lawsuit through Mr. Pacheco, who assured him "not to worry and represented that the case would be resolved quickly." (Garcia

Letter ¶¶ 1-2). Mr. Garcia's interactions with former defense counsel were "extremely limited," and he "did not understand that deadlines had passed or that a default was being sought." (*Id.* ¶¶ 3-4). Mr. Garcia "became aware of the seriousness of the case only when [he] learned that a deposition was scheduled." (*Id.* ¶ 5). Mr. Garcia had not reviewed the complaint in detail, did not understand the claims being made against him, and felt unprepared to testify about matters he did not manage or control. (*Id.*). "At that point[,] [he] realized the situation was not being handled as [he] had been led to believe." (*Id.*).

The Court remains skeptical of Mr. Garcia's purported ignorance. At the default judgment hearing, it remarked:

> So I have to say, Mr. Garcia, at this stage, willful? It was certainly beyond negligent. It was reckless. ... It just sounds as though you didn't do certain things because you were looking for counsel, then you didn't find counsel and didn't do certain things, and then you had some time or needed some time with your family over the holidays and didn't do certain things. That's what I've got so far.

(D.J. Hg. Tr. 15). And that is to say nothing of the prejudice that Plaintiff has suffered because of Mr. Garcia's role in delaying this case. But given the facts that: (i) Mr. Garcia has presented a meritorious defense; (ii) the Second Circuit prefers resolutions on the merits rather than by default; (iii) any doubt about how to resolve a motion to vacate default should be resolved in favor of vacatur; and, in particular, (iv) imposing default judgment in the amount of nearly $110,000 for a case rooted in $1,500 in unpaid wages typifies a harsh and

unfair result, the Court is compelled to grant Mr. Garcia's request to vacate the certificate default against him. *See Ghost in the Mach. Inc.*, 2026 WL 1383365, at *2.

But Mr. Garcia should make no mistake. That the Court here grants him reprieve does not mean that it is in any way excusing his failure to engage with this case. (*See* D.J. Hg. Tr. 16 ("[E]ven if you didn't have counsel, I don't know what makes you think that you can just blow off court deadlines or blow off [Plaintiff's counsel] and have no consequences to it."); *id.* at 18 ("[F]rom where I'm sitting, you've done nothing to comply with my orders and you've given no care at all to this case.")). So Mr. Garcia is warned: any further failures to diligently litigate this case — including any failures to promptly respond to Court orders or to engage cooperatively with Plaintiff and Plaintiff's counsel — will result in terminal sanctions against him and the requirement that he pay some amount of Plaintiff's attorneys' fees, pursuant to Federal Rules of Procedure 16(f) and 37(b), the statutory provisions relevant to this case, and the Court's inherent judicial powers.

The parties are ORDERED to submit to the Court on or before **November 6, 2026**, a joint letter and proposed revised case management plan in accordance with the specifications laid out in the Notice of Initial Pretrial Conference. (*See* Dkt. #28). If the parties wish to have a conference to discuss case management concerns, they may so request in their joint letter.

The Clerk of Court is directed to VACATE the certificate of default against Mr. Garcia. (*See* Dkt. #14). The Clerk of Court is further directed to modify the caption of the case as shown above. And finally, the Clerk of Court is directed to mail a copy of this Order to Mr. Garcia at the following address:

Eliezer Garcia
1984 Gildersleeve Ave., 1st Floor
Bronx, NY 10473

SO ORDERED.

Dated: October 9, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge